ORIGINAL

Approved: *Thomas John Wright*
THOMAS JOHN WRIGHT
Assistant United States Attorney

Before:   THE HONORABLE STEWART D. AARON
          United States Magistrate Judge
          Southern District of New York

20 MAG 2960

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :    COMPLAINT
                                    :
          - v. -                    :    Violation of 21 U.S.C.
                                    :    § 846
EDINUEL RODRIGUEZ POLANCO,          :
     a/k/a "Adinel                  :
     Polanco-Rodriguez," and        :    COUNTY OF OFFENSE:
FELIPE GONZALEZ,                    :    BRONX
                                    :
          Defendants.               :
                                    :
------------------------------------x

SOUTHERN DISTRICT OF NEW YORK, ss:

      JOHN KERWICK, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

    1.  In or about March 2020, in the Southern District of New York and elsewhere, EDINUEL RODRIGUEZ POLANCO, a/k/a "Adinel Polanco-Rodriguez," and FELIPE GONZALEZ, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.  It was a part and an object of the conspiracy that EDINUEL RODRIGUEZ POLANCO, a/k/a "Adinel Polanco-Rodriguez," and FELIPE GONZALEZ, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

    3.  The controlled substances that EDINUEL RODRIGUEZ POLANCO, a/k/a "Adinel Polanco-Rodriguez," and FELIPE GONZALEZ,

the defendants, conspired to distribute and possess with intent to distribute were: (i) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4.  I am a Task Force Officer with the DEA, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law-enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.  Based on my participation in this investigation, including my personal observations, my review of law-enforcement reports, and my conversations with other law-enforcement officers, I have learned the following, in substance and in part:

    a.  As part of a DEA investigation into drug trafficking in the metropolitan area of the City of New York, I was informed by a confidential source ("CS-1"),[1] in substance and in part, that on or about March 15, 2020, CS-1 participated in telephone conversations in Spanish over a certain telephone number ("Call Number-1") with an individual whom I later identified, as described below, as EDINUEL RODRIGUEZ POLANCO, a/k/a "Adinel Polanco-Rodriguez," the defendant, with whom CS-1 arranged to

---

[1] At present, CS-1, who has no criminal history, is providing information to the DEA in return for financial payments. Within the past six months, information that CS-1 has provided regarding the trafficking of controlled substances has proven credible and reliable and has been corroborated by other evidence and investigation.

purchase a quantity of heroin and whose voice CS-1 recognized from later in-person conversations with RODRIGUEZ POLANCO.

   b. Thereafter, on or about March 16, 2020, in my presence and that of other law-enforcement agents, CS-1 participated in multiple further telephone conversations in Spanish over Call Number-1 with RODRIGUEZ POLANCO, which CS-1 placed on speakerphone and which were recorded and reviewed by a law-enforcement officer fluent in Spanish with whom I have discussed the substance of the telephone conversations. In these telephone conversations, CS-1 arranged to purchase 1.5 kilograms of narcotics from RODRIGUEZ POLANCO, who stated, in substance and in part, that he held 1,500 grams.

   c. In particular, on or about March 16, 2020, in my presence, CS-1 arranged, during a telephone conversation with RODRIGUEZ POLANCO over Call Number-1, to meet RODRIGUEZ POLANCO in the vicinity of a building in Bronx County, New York ("Building-1") to acquire a sample of narcotics. Accordingly, on March 16, 2020, CS-1 met RODRIGUEZ POLANCO in front of Building-1. At this time, I conducted surveillance and saw the individual whom I later identified as RODRIGUEZ POLANCO walk out from Building-1 and hand a plastic bag to CS-1, who was standing on the sidewalk nearby Building-1. Thereafter, I met with CS-1, who handed to me the plastic bag, which contained a quantity of a brown powder, which consisted of a fragment compressed in a manner consistent in my training and experience with the use of a press common in wholesale drug trafficking. Based on my training and experience, the appearance of the brown powder that RODRIGUEZ POLANCO provided to CS-1 was consistent with heroin.

   d. Thereafter, on or about March 16, 2020, in my presence, CS-1 confirmed, during a telephone conversation with RODRIGUEZ POLANCO over Call Number-1, that CS-1 would purchase from RODRIGUEZ POLANCO approximately 1.5 kilograms of narcotics in the vicinity of Building-1. In connection with this confirmation, CS-1 received a text from Call Number-1, which I reviewed and which consisted of a photograph depicting a digital scale that read "500" and was loaded with a quantity of a white powder, again compressed in a manner consistent in my training and experience with the use of a press common in wholesale drug trafficking. Based on my training and experience, the appearance of the white powder in the photograph was consistent with fentanyl. In the background of the photograph, a tile floor is visible arranged in a pattern of square brown tiles. Based on my training, experience, and participation in this investigation, I believe RODRIGUEZ POLANCO sent this photograph to CS-1 to confirm that RODRIGUEZ POLANCO had narcotics available to sell to CS-1.

e. Later, on or about March 16, 2020, in the course of surveillance, I watched RODRIGUEZ POLANCO, who was carrying a backpack, and another individual whom I later identified, as described below, as FELIPE GONZALEZ, the defendant, walk out of Building-1 to a parked car at which CS-1 was waiting to conduct the narcotics transaction arranged with RODRIGUEZ POLANCO, as described above. At this time, another confidential source ("CS-2") was sitting in the car.[2] I was informed by CS-2, in substance and in part, that RODRIGUEZ POLANCO sat down in the parked car with CS-2, opened the backpack, and showed CS-2 its interior, which CS-2 saw contained one brick of a brown powder and one-half brick of a white powder. I have been informed by CS-1, in substance and in part, that as RODRIGUEZ POLANCO was showing CS-2 the contents of the backpack, CS-1 participated in a recorded conversation in Spanish with GONZALEZ, who stated, in substance and in part, that CS-1 should not worry about GONZALEZ, that GONZALEZ was present to ensure that everything proceeded smoothly, which I understand, based on my training, experience, and participation in this investigation, to be a reference to the planned narcotics transaction, and that CS-1 could now show GONZALEZ the money.

f. After RODRIGUEZ POLANCO sat down in the parked car to conduct the narcotics transaction, as described above, other law-enforcement officers and I approached the car, detained and identified RODRIGUEZ POLANCO and GONZALEZ, and seized the backpack from inside the car. I saw that the backpack contained one brick of a brown powder and one-half brick of a white powder, both compressed in a manner consistent in my training and experience with the use of a press common in wholesale drug trafficking. Later, I weighed and field tested the brown powder and white powder. The brown powder weighed approximately one kilogram and field tested positive for heroin. The white powder weighed approximately 500 grams and field tested positive for fentanyl. On RODRIGUEZ POLANCO's person, I also found a cellphone assigned Call Number-1, which is the telephone number used to arrange the narcotics transaction with CS-1, as described above.

g. After RODRIGUEZ POLANCO informed me that he lived in an apartment inside Building-1 ("Subject Premises-1"), the DEA

---

[2] At present, CS-2, who has a prior felony conviction for narcotics trafficking, is providing information to the DEA in return for the possibility of consideration with respect to his immigration status in the United States. Within the past six months, information that CS-2 has provided regarding the trafficking of controlled substances has proven credible and reliable and has been corroborated by other evidence and investigation.

obtained a warrant to search Subject Premises-1, which was authorized by the Honorable Stewart D. Aaron, United States Magistrate Judge for the Southern District of New York. Thereafter, on or about the evening of March 16, 2020, the DEA executed the search warrant and found inside Subject Premises-1, in a bedroom whose tile floor was arranged in a pattern of square brown tiles that I recognized to be the same as the floor in the photograph described in ¶ 5.d., a digital scale and further parts of a brick of white powder, compressed in a manner consistent in my training and experience with the use of a press common in wholesale drug trafficking.  Later, I weighed and field tested the white powder, which weighed approximately 400 grams and tested positive for fentanyl.

WHEREFORE, I respectfully request that EDINUEL RODRIGUEZ POLANCO, a/k/a "Adinel Polanco-Rodriguez," and FELIPE GONZALEZ, the defendants, be imprisoned or bailed, as the case may be.

_____
JOHN KERWICK
Task Force Officer
Drug Enforcement Administration


Sworn to before me this
17th day of March, 2020


_____
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK